**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN LOGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 1323** |
| | ) | |
| **CITY OF EVANSTON and EVANSTON POLICE CHIEF DEMITROUS COOK,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| --------------------------------------------------- | ) | |
| | ) | |
| **JAMIR JOHNSON, KEVIN NAILS, JELISA NAILS, ANDRE WATKINS, and WILLIAM STEWART individually and on behalf of a class of similarly situated persons,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 2736** |
| | ) | |
| **CITY OF EVANSTON and POLICE CHIEF DEMITROUS COOK,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Kevin Logan and a separate group of plaintiffs, Jamir Johnson, Kevin Nails,

Jelisa Nails, Andre Watkins, and William Stewart, have each sued the City of Evanston

and Evanston Police Chief Demitrous Cook. The *Johnson* suit is brought on behalf of a

class of similarly situated persons, but the Court will refer to the plaintiffs in that case as

Johnson for simplicity's sake.  In both cases, the plaintiffs assert claims under 42 U.S.C § 1983 against the City of Evanston based on the theory of municipal liability announced in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) and against Cook in his individual capacity.  Logan asserts claims against the City and Cook for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution (counts 1 and 2 against both defendants, count 9 against Cook only, and count 10 against the City only), defamation per se (count 3), defamation (count 4), negligent infliction of emotional distress (count 5), intentional infliction of emotional distress (count 6), violation of the rights to privacy, due process, and individual integrity under the Illinois Constitution (count 7), negligence (count 8), gross negligence (also numbered count 8), willful and wanton conduct (count 11), and against the City for indemnification of Cook (count 12).  Johnson asserts claims against Cook (counts 1 and 2) and the City (count 3) for violations of the Fourteenth Amendment, and against both for willful and wanton conduct (count 4), intentional infliction of emotional distress (also numbered count 4), and indemnification (count 5).

The defendants have moved to dismiss all of the claims in both suits under Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the Court dismisses the following claims:  (1) Logan and Johnson's claims for willful and wanton conduct, (2) Logan and Johnson's state law claims against the City, (3) Logan's claim against the defendants under the Illinois Constitution, and (4) Johnson's Fourteenth Amendment due process claim.  The Court denies the defendants' motions with respect to all of the plaintiffs' other claims.

2

**Background**

The plaintiffs' complaints allege the following facts, which, at this stage, the Court accepts as true. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

On February 17, 2020, Evanston police chief Demetrious Cook published onto his personal public Snapchat account several photographs of the plaintiffs, who were individuals of interest in Evanston police investigations. Snapchat is a mobile social media application that allows users to upload and share photos and videos. Cook also published these individuals' dates of birth and last known addresses onto his public Snapchat "story." A Snapchat story is essentially the application user's personal profile, where he may publicly share pictures and videos. To publicly share a picture on Snapchat, the user must first click the "Story" option and then click a confirmation button to share the photo. Some of the individuals whose information Cook published had "in custody" or "DOA" (dead on arrival) handwritten next to their images.

In Cook's publication of Logan's image, the words "pending" and "HIV" appeared handwritten next to Logan's image. The image and wording appear as follows, with Logan's image and his personally identifying information redacted out for reasons of privacy:



Social media users who saw Cook's publication of Logan then shared the publication on Facebook and via personal text messages, which included Logan's image, personal information, and supposed HIV status. Logan contends that this was a false statement in that he had never been diagnosed with HIV and was not pending a test result. After the incident, Logan underwent an HIV test on February 22, 2020, which was negative. Logan contends that he suffered embarrassment, ridicule, cyber-bullying, anxiety, and emotional distress as a result of Cook's conduct.

On February 21, 2020, after Cook was informed that the pictures had been shared by members of the public, he removed them from his Snapchat story and issued a public statement regarding the incident. He stated that the individuals whose information he shared were subjects previously identified in Evanston Police Department investigations and that the photos were taken to assist him with the investigation. He further stated that he did not realize that photos taken with the Snapchat application could be made public with a single click.

Plaintiffs allege that the Evanston Police Department has policies in place that prohibit, among other things, the following activities:

a. Making personal copies of recordings created while on duty or while acting in their official capacity;

b. Retaining recordings of activities or information obtained while on-duty, whether the recording was created with department-issued or personally owned recording devices;

c. Duplicating or distributing such recordings;

d. Using such recordings for the purpose of embarrassment, intimidation, or

ridicule;

e.  Sharing of any law enforcement information via social media; and

f.  Releasing protected information.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The law does not impose a highly exacting standard on the plaintiffs at this stage, however: "[t]he plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. A plaintiff's burden on a motion to dismiss is limited to alleging "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## A.  Federal constitutional claims

### 1.  Fourth Amendment claim

In count 1 of his complaint, Logan contends that, in violation of his Fourth Amendment rights, Cook knowingly obtained and disclosed to the public purported medical information regarding Logan, indicated by the handwritten notation "HIV." The defendants do not challenge the sufficiency of the Fourth Amendment claim in their opening briefs. Though they make some mention of the Fourth Amendment in their replies, that was too late; they forfeited any challenge to the legal sufficiency of the

claim by failing to make the argument in their opening briefs. *See, e.g.*, *Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 897 (7th Cir. 2017).

### 2. Due process claims

The defendants have moved to dismiss both Logan and Johnson's substantive due process claims under the Fourteenth Amendment (Logan Am. Compl., count 2; Johnson Compl., count 1).

#### i. Johnson

Johnson alleges that the defendants violated his substantive due process rights under the Fourteenth Amendment. Specifically, he contends that Cook's public sharing of the plaintiffs' home addresses and suggesting that they were involved in a criminal investigation created a danger to the plaintiffs that did not otherwise exist.

Johnson's claim is based on the theory of a "state-created danger exception," which is an exception to the general rule that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" of the Fourteenth Amendment. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).

Under the state-created danger exception of the Due Process Clause of the Fourteenth Amendment, "liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise [have] faced." *Buchanan-Moore*, 570 F.3d at 827. To state a claim on this basis, a plaintiff must allege facts permitting a plausible inference that: (1) the state, by its affirmative acts, created an increased danger to the plaintiff, (2) the state's failure to protect the plaintiff from this

7

danger proximately cause an injury to the plaintiff, and (3) the state's failure to protect the plaintiff shocks the conscience. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007).

The defendants argue that Johnson has failed to sufficiently allege an injury or conduct that shocks the conscience. The Court agrees with Cook regarding the issue of injury and thus need not address the second point. Johnson's complaint fails to allege any facts identifying that he suffered any actual injury as a result of Cook's conduct. *See Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015). Johnson cites *Munn v. City of Aurora*, No. 17 C 5369, 2018 WL 1124424, at *3 (N.D. Ill. Mar. 1, 2018), for the proposition that the state-created danger exception applies "[i]f the government throws an individual into a snake pit, and the individual is not harmed by the snakes, but hurts himself escaping the pit." *Munn*, 2018 WL 1124424, at *3. The Court in *Munn* concluded that under these circumstances, "the government has still placed the individual in danger that has caused the individual harm." *Id.* Perhaps so, but Johnson has not alleged that he suffered any actual injury at all, whether by someone else or self-inflicted in the course of avoid the danger allegedly created by the defendants. An allegation that the defendant's conduct created a risk of harm is insufficient. an actual injury must result from the defendant's conduct. *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) ("A due-process claim of this kind requires proof … [that] "the government's failure to protect against the danger caused the plaintiff's injury). For this reason, the Court dismisses Johnson's substantive due process claim (Johnson Compl., count 1).

### ii.  Logan

Logan also asserts alleging that the defendants violated his right to privacy under the Fourteenth Amendment by disclosing alleged medical information about him to the public.  *See* Logan Am. Compl. ¶ 80.  The defendants argue that Logan has failed to state a viable substantive due process claim under the Fourteenth Amendment.  The Court disagrees.

The Supreme Court has recognized a right to privacy under the Fourteenth Amendment that includes the right "not to have his private affairs made public by the government."  *Whalen v. Roe*, 429 U.S. 589, 599 n.24 (1977).  The Seventh Circuit has read *Whalen* to "recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information" under the Fourteenth Amendment.  *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010).  "A number of cases in the lower federal courts, including our own, building on *Whalen* and *Nixon*, recognize a qualified constitutional right to the confidentiality of medical records and medical communications."  *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995); *see also Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 648 (7th Cir. 2013) (discussing privacy protection for medical records in the context of the Fourth Amendment).

Circuit precedent supports the proposition that constitutional protection extends to medical "information that most people are reluctant to disclose to strangers."  *Wolfe*, 619 F.3d at 785.  The court has stated that "medical information may be a form of protected confidential information because of its intimate and personal nature."  *Denius v. Dunlap*, 209 F.3d 944, 957 (7th Cir. 2000).

The defendants cite *Whalen v. Roe* for the proposition that "the concept of a constitutional right to privacy still remains largely undefined." *Whalen*, 428 U.S. at 599 n. 24. But even if the contours of the right are unclear, the Seventh Circuit has stated that the Fourteenth Amendment confers a fundamental "right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information." *Wolfe*, 619 F.3d at 875 (this right to privacy is "defeasible only upon proof of a strong public interest in access to or dissemination of the information").

The Court concludes that Logan has sufficiently alleged a Fourteenth Amendment substantive due process claim based on Cook's public disclosure of his purported HIV status on Snapchat without his permission. His allegations contain enough factual content to make out a claim for governmental violation of his medical privacy. *See Grimes v. County of Cook*, --- F. Supp. 3d ---, 2020 WL 1954149, at *3 (N.D. Ill. Apr. 23, 2020) (denying motion to dismiss Fourteenth Amendment substantive due process claim alleging violation of the "right to medical privacy"); *see also Denius*, 209 F.3d at 956 (upholding Fourteenth Amendment substantive due process claim; "this Circuit has outlined a clearly established substantial right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest"); *Anderson*, 72 F.3d at 522; *Schaill v. Tippecanoe Cty. Sch. Corp.*, 864 F.2d 1309, 1322 n.19 (7th Cir. 1989) (explaining that there is "a substantial privacy interest in the confidentiality of medical information").

Finally, Logan need not allege that the defendants' conduct shocks the conscience to state a viable claim for violation of his medical privacy. *See Denius*, 209 F.3d at 956-57 (allowing medical privacy claim to proceed without allegation that

conduct "shock[ed] the conscience").

### 3. Equal protection claims

Johnson and Logan both allege that the defendants violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against them based on race (Logan Am. Compl., count. 9; Johnson Compl., count 2). To state a claim for violation of equal protection, the plaintiff must allege that (1) he is a member of a protected class; (2) he was similarly situated to individuals who are not in the protected class; (3) he was treated differently from those persons; and (4) the defendant acted with discriminatory intent. *Swearingen-El v. Cook County Sheriff's Dep't*, 416 F. Supp. 2d 612, 617 (N.D. Ill. 2006); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 944 (7th Cir. 1996).

### i. Johnson

Johnson alleges that Cook treated "minority civilians and Caucasian civilians in . . . a different manner" with respect to posting their photographs and thereby "violated Plaintiffs' rights under the Fourteenth Amendment to Equal Protection." Johnson Compl. ¶ 39. More specifically, Johnson alleges that Cook "did not publicly share booking photographs and personal information of white civilians" even though "white individuals have committed criminal acts in the City of Evanston." *Id.* ¶¶ 37, 38.

The defendants argue that Johnson's claim is deficient because he fails to identify similarly-situated non-Black individuals who were treated differently. But as Johnson contends, he is not required to do this to state a claim. A plaintiff asserting an equal protection claim "does not need to specifically identify similarly situated individuals" in his complaint. *See Swearingen-El*, 416 F. Supp. 2d at 617. Rather, he only "needs to assert that the police discriminated against [him and the rest

of the class] because of [their] race." *Kim v. Ritter*, 493 F. App'x 787, 789 (7th Cir. 2012); *see also Brown v. Cook County*, No. 17 C 8085, 2018 WL 3122174, at *15 (N.D. Ill. June 26, 2018) (Kennelly, J.) ("[the plaintiff] is not required to specifically identify similarly situated individuals [to establish an equal protection violation]"); *cf. Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (a plaintiff in a Title VII case need not "include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination" to survive a motion to dismiss). Johnson's allegations that the plaintiffs were "subjected to unequal treatment because of [their] race" are "sufficient to state an equal protection claim." *See Swearingen-El*, 416 F. Supp. 2d at 617.

Cook argues that Johnson's claim fails to sufficiently plead the "similarly situated" element because he has not alleged that "white Evanston citizens who were subjects previously identified in Evanston Police Department investigations were treated differently." Def. Cook's Reply (dkt. no. 29) at 4. The Court disagrees; giving Johnson's complaint a fair reading, he alleges just that in paragraph 37.

For these reasons, the defendants are not entitled to dismissal of Johnson's equal protection claim (Johnson Compl., count 2).

> ### ii.    Logan

Logan also asserts an equal protection claim against the defendants (Logan Am. Compl., count 9). He alleges that even though "white individuals have committed criminal acts in the City of Evanston," Cook "did not publicly share booking photographs and personal information of white civilians." Logan Am. Compl. ¶ 164. Logan also alleges that all of those whose pictures and personal information Cook shared were

12

African American.  *Id.* ¶ 163.

The defendants argue that Logan has failed to allege sufficient facts "showing white civilians were persons of interest in Cook's investigation" or facts showing that "the picture posted [by Cook] was because of his race."  Def. City's Mem. of Law in Supp. of Mot. to Dismiss (dkt. no. 23) at 10.[1]  The first point is a non-starter.  Logan has sufficiently alleged that Cook did not post white arrestees' photographs.

Second, Logan has sufficiently alleged that Cook acted with discriminatory intent. The defendants contend that Logan's claim fails because his complaint references Cook's public statement following the incident that he published Logan's photograph accidentally.  This argument lacks merit.  Logan's reference to Cook's statement does not mean that he has adopted it or conceded its accuracy.  And at this point in this lawsuit, Logan is not required to prove that Cook acted intentionally; he need only allege it.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Logan has plausibly alleged that Cook acted with discriminatory intent when he published Logan's image on Snapchat.

For these reasons, the Court denies the defendants' motion to dismiss Logan's equal protection claim (Logan Am. Compl., count 9).

**B.    Section 1983 claims against City**

Based on the discussion in the previous section, Logan and Johnson have asserted viable claims under section 1983 against Cook in his individual capacity.  The Court next assesses whether the plaintiffs have made out viable section 1983 claims

---

[1] The defendants also contend that Logan failed to state a "class-of-one" equal protection claim, but Logan has asserted a race discrimination claim, not a class-of-one claim.

against the City. In this regard, the Court notes that the plaintiffs' "official capacity" claims against Cook are, in effect, claims against the City. *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012).

The plaintiffs seek to impose liability on the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, "[a] village or other municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Id.* "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty.*, 183 F.3d 734, 737 (7th Cir. 1999). The plaintiffs contend that *Monell* liability exists because Cook, as the Evanston police chief, had final "policymaking authority" that he exercised, causing the plaintiffs' constitutional injuries.

The defendants argue that Cook lacked policymaking authority with respect to the matters at issue because the Evanston City Code only authorizes him to administer and enforce the City's affairs and policies. The defendants' second argument is that like the Chicago superintendent of police in *Auriemma v. City of Chicago*, 957 F.3d 397 (7th Cir. 1992), Cook "violated rather than implemented the policy" of the municipality when he published the plaintiffs' information. *Id.* at 401.

The Court disagrees. First, the plaintiffs have alleged sufficient facts to make it

14

plausible that Cook, unlike the Chicago police superintendent in *Auriemma*, "retains complete authority over how criminal investigations are conducted" and that he is therefore a "final policymaker."  Pl. Johnson's Resp. (dkt. no. 28) at 6.  At this point it is too early to say definitively whether Cook qualifies in this regard, because the answer "may turn on" factual questions regarding the extent of Cook's policymaking authority. *See FKFJ, Inc. v. Village of Worth*, No. 18 C 2828, 2019 WL 277723, at *3 (N.D. Ill. Jan. 22, 2019).  But the plaintiffs' allegations are sufficient to clear the plausibility threshold. The Court notes, in this regard, that there is no question that a chief of police may be a final policymaker in appropriate circumstances.  *See Manos v. Caira*, 162 F. Supp. 2d 979, 993 (N.D. Ill. 2001).

The defendants also contend that Cook's actions cannot be characterized as the policy of the City of Evanston because he violated the City's policies prohibiting, among other things, making personal copies of recordings created while on duty or while acting in one's official capacity, duplicating or distributing such recordings, sharing law enforcement information via social media, and releasing protected information. In *Auriemma*, the Seventh Circuit explained that "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's actions must implement rather than frustrate the government's policy."  *Auriemma*, 957 F.2d at 400.

Defendants' reliance on *Auriemma* is unavailing, at least at the motion to dismiss stage.  In *Auriemma*, the Seventh Circuit found that city ordinances banned race discrimination in the Chicago police department and therefore expressly banned the superintendent's discriminatory conduct.  *See id.* at 401.  In this case, the defendants have not pointed to any Evanston ordinance that limits Cook's authority in conducting

police investigations. Although Cook's conduct may have violated the Evanston City Code, a statement issued by Cook himself indicated that his actions occurred "during the course of a criminal investigation," which is "within the realm of the authority granted to the police chief." Pl.'s Johnson's Resp. at 4.

Finally, Judge Ripple's concurrence in *Auriemma* indicates that the Seventh Circuit's opinion did not foreclose the possibility that the superintendent in that case could have been considered a policymaker on other facts. *See Auriemma*, 957 F.2d at 401 (Ripple, J., concurring); *see, e.g.*, *McAllister v. Town of Burns Harbor*, No. 07 C 141, 2011 WL 2792466, at *4 (N.D. Ind. July 14, 2011) ("In [*Auriemma*] the plaintiffs alleged that Rice, the Chicago superintendent of police, made discriminatory promotions and demotions . . . the Seventh Circuit held that he was not a final policymaker *with respect to the actions* because ordinances applicable to the police department unequivocally banned racial and political discrimination.") (emphasis added). In this case, the plaintiffs plausibly allege that "no ordinance constrained [Cook]" as it pertained to his alleged role as a policymaker in Evanston police investigations. *Vodak v. City of Chicago*, 639 F.3d 738, 748-49 (7th Cir. 2011).

For these reasons, the City of Evanston is not entitled to dismissal of the plaintiffs' *Monell* claims under Rule 12(b)(6) (Logan Am. Compl., counts 1,2, and 10; Johnson Compl., count 3).

## C. Qualified immunity

The defendants contend that the individual-capacity section 1983 claims against

Cook should be dismissed because he is entitled to qualified immunity.[2]  Qualified immunity "protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).  In assessing a defense of qualified immunity, the Court considers "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct."  *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011).

The defendants' opening briefs are insufficient to invoke qualified immunity as a basis for dismissal under Rule 12(b)(6).  In his opening brief in *Johnson*, Cook does not even mention qualified immunity.  Nor does the City's opening brief in that case do so.  They do not reference the point in their reply briefs in *Johnson* either.  In *Logan*, Cook's opening brief says nothing about qualified immunity or, for that matter, any other issue; Cook simply adopted the City's brief.  The opening brief filed by the City in *Logan* does address qualified immunity.  That is incongruous to say the least; as indicated earlier, a municipality cannot claim qualified immunity.  *See* n.2 *supra*.  But even assuming the City can appropriately assert the defense on Cook's behalf, its opening brief does not do so sufficiently.  The City's entire discussion of the point consists of three paragraphs.  *See* Def. City's Mem. of Law in Supp. of Mot. to Dismiss (dkt. no. 23) at 10-11.  The first two simply state the law of qualified immunity.  The only substantive discussion of the

---

[2] Municipalities do not enjoy qualified immunity in section 1983 lawsuits.  *See Owen v. City of Independence*, 445 U.S. 622, 657 (1980).

point by the City consists of a three-sentence paragraph:

> In this case, the right Plaintiff's Complaint purports to assert is not clearly established. There is no statute, nor common law "factually similar to the one under review" that clearly establishes the publication of Plaintiff's photograph, date of birth, address and the words "pending HIV" would be an obvious violation of his constitutional right. Accordingly, Plaintiff's Complaint must be dismissed.

*Id.* at 11. The argument is unsupported and entirely conclusory. The defendants have forfeited the point for purposes of the motions to dismiss. *See, e.g., United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020).

That aside, the qualified immunity defense lacks merit at this stage of the case. The Seventh Circuit has made it clear that "[b]ecause an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate." *Alvarado*, 267 F.3d at 651. As the Court has explained, the plaintiffs have alleged sufficient facts to make out claims for deprivation of their constitutional right to equal protection: they have sufficiently alleged that Cook made public postings of private information about them; that he did so intentionally; and that he acted on the basis of their race. At this stage, the Court must take these allegations as true. The defendants have made no effort to explain—likely because they could not do so credibly—how the prohibition against racial discrimination in law enforcement was not clearly established at the relevant time. And as indicated, in the *Logan* case the defendants have not even addressed the merits of the Fourth Amendment claim.

For these reasons, Cook is not entitled to dismissal under Rule 12(b)(6) on the basis of qualified immunity.

**D.      State tort claims**

The plaintiffs assert several state-law claims against the defendants, which the defendants have moved to dismiss on various grounds.

**1.      Willful and wanton conduct claim**

Logan and Johnson each assert claims for willful and wanton conduct.  As the defendants correctly assert, however, there is "no separate, independent tort of willful and wanton conduct" under Illinois law.  *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 19, 973 N.E.2d 880, 887 (to recover damages based on willful and wanton conduct, a plaintiff must plead the basic elements of negligence).

An allegation of willful and wanton conduct may preserve a negligence claim against dismissal because section 2-202 of the Illinois Government and Governmental Employees Tort Immunity Act, which the plaintiffs have invoked, "does not immunize willful and wanton conduct."  *See Mack Inds., Ltd. v. Village of Dolton*, 2015 IL App (1st) 133620, ¶ 40, 30 N.E.3d 518, 532; *see also United States v. County of Cook*, No. 05 C 5490, 2008 WL 4345224, at *5 (N.D. Ill. Mar. 24, 2008).  The Court therefore dismisses the separate claims of willful and wanton conduct in both plaintiffs' complaints (Logan Am. Compl., count 11; Johnson Compl., count 4) but will consider the allegations of willful and wanton conduct, if applicable, in addressing the plaintiffs' other state tort claims.

**2.      Tort Immunity Act**

The defendants contend that the plaintiffs' remaining common law claims are barred by the Tort Immunity Act.  The Court agrees, with the exception of Logan's defamation claims against Cook individually.

First, the City is immune from liability with regard to Logan's defamation per se and defamation claims (Logan Am. Compl., counts 3 and 4) under section 2-107 of the Tort Immunity Act. Under section 2-107, "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 Ill. Comp. Stat. 10/2-107. This provision, on its face, immunizes the City from liability in defamation suits. *See Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80, 775 N.E.2d 184, 188-89 (2002) (dismissing defamation, false light invasion of privacy, and personal injury claims against a city because they were barred by section 2-107).

With regard to Cook, the Tort Immunity Act has no provision expressly immunizing governmental employees from liability for defamation. Section 2-210, which is more or less parallel to section 2-107, states that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 Ill. Comp. Stat. 10/2-210. The Court agrees with Judge Joan Gottschall's decision in *Robinson v. Robertson v. Lofton*, No. 13 C 3205, 2013 WL 5796780 (N.D. Ill. Oct. 25, 2013), in which she ruled that section 2-210, although it precludes claims arising from "provision of information," does not bar claims for knowing defamatory statements in light of the express limitation of immunity to claims of *negligent* misrepresentation. *Id.* at *8.

All of the plaintiffs' remaining state-law claims against both defendants are,

20

however, barred by sections 2-107 and 2-210.  Specifically, Logan's claims for negligent infliction of emotional distress (count 5), intentional infliction of emotional distress (count 6), negligence (count 8), and gross negligence (also numbered count 8), and Johnson's claim for intentional infliction of emotional distress (his second count 4) all arise from the "provision of information" and are barred by these provisions of the Tort Immunity Act. *See Ramos*, 333 Ill. App. 3d at 80, 775 N.E.2d at 188-89 (affirming dismissal of defamation, false light, and personal injury claims under section 2-107).  The plaintiffs' claims here, like those of the plaintiff in *Ramos*, "arose from the publication of a photograph" by a city official.  *See id.*; *see also Kurkowski-Alicea v. Village of Bolingbrook*, No. 10 C 1792, 2010 WL 3721477, at *2-3 (N.D. Ill. Sept. 15, 2010).

These claims are not saved by the plaintiffs' contention that Cook acted willfully and wantonly.  The Illinois Appellate Court has ruled, persuasively, that the term "negligent" is not read into section 2-210's immunity for claims arising from "the provision of information."  *See Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111, 948 N.E.2d 1108, 1114 (2011).  In other words, that particular immunity applies even if the conduct was intentional.  It does not contain an exception for "willful and wanton" conduct.  "[W]here a provision of the Tort immunity Act contains no exception for willful and wanton conduct, we will not read one in."  *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 44, 973 N.E.2d 880, 893 (citing *Ries v. City of Chicago*, 242 Ill. 2d 205, 222, 950 NE.2d 631, 641 (2011)).

### 3.  Defamation per se and defamation claims

The defendants also contend that Logan's claims of defamation and defamation per se against the City and Cook (Logan Am. Compl., counts 3 and 4) fail to state a

21

claim.

"A statement is defamatory under Illinois law if it 'tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person.'" *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006)). "The *per se* designation applies if the defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Huon*, 841 F.3d at 738. Statements that impute "infection with a loathsome communicable disease" are considered defamatory *per se*. *Tuite*, 224 Ill. 2d at 501, 866 N.E.2d at 121. Logan alleges that Cook's statement imputes that he is infected with a "loathsome communicable disease."

The defendants argue that Cook's statement—posting Logan's photograph, date of birth, and alleged address with the words "pending" handwritten next to his name and contact information and "HIV" handwritten next to his photograph—is "reasonably capable of an innocent construction." *Id.* at 502, 866 N.E.2d at 121. The "innocent construction" rule requires courts to give "the defendant's words their natural and obvious meaning, after having considered both the substance of defendant's alleged statements and the context in which they allegedly were made." *Huon*, 841 F.3d at 738. "If a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925 (7th Cir. 2003).

The Court rejects defendants' argument, at least for purposes of the present motion. To qualify for protection under the innocent construction rule, the innocent

interpretation "must be *reasonable*." *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 533 (7th Cir. 2009). "The rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.* (citing *Tuite*, 224 Ill. 2d at 504-05, 866 N.E.2d at 123). Application of the rule is a question of law. *Id.*

The defendants argue that Cook's statement is reasonably construed as indicating that "the results of an HIV test were pending, not that Plaintiff was, in fact, HIV positive." Def. City's Mem. of Law in Supp. of Mot. to Dismiss (dkt. no. 23) at 13. The Court finds this argument unpersuasive, though it is not at this point rejecting the claim of innocent construction with finality. Specifically, the configuration of the handwritten notations next to Logan's photograph does not appear to indicate that HIV test results are pending. Rather, the notation "pending" is written horizontally next to Logan's contact and arrest information (i.e., his date of birth, address, and "I.R." (individual record) number); the notation HIV is written vertically, in much larger letters, lower on the page, next to Logan's photograph. Any connection between the words "pending" and "HIV" is not apparent. With this in mind, there is a solid basis for a contention that Cook's use of the term HIV, given its configuration on the page, "clearly indicates or leads a reasonable person to believe Plaintiff is HIV positive" or is, at least, suspected of being HIV positive by the Evanston police. Pl. Logan's Resp. at 9. Cook's statement does not make any reference to HIV testing. "[T]he context of a statement is critical in determining its meaning," *Tuite*, 224 Ill. 2d at 512, 866 N.E.2d at 127, and here the context does not suggest that Cook was merely saying that Logan had HIV test results pending. The Court overrules defendants' innocent construction argument, at least for

23

purposes of their motion to dismiss Logan's defamation claim under Rule 12(b)(6).

### 4. Illinois constitutional claim

In count 7 of his amended complaint, Logan asserts claims for violation of his state constitutional rights to privacy, due process, and individual integrity. Ill. Const. 1970, art. I, §§ 2, 6, 20. The Seventh Circuit has stated that it does not appear that there is a private right of action for violation of section 2, *Williams v. Dart*, 967 F.3d 625, 637 n.1 (7th Cir. 2020); other judges in this district have ruled similarly with regard to section 6's due process clause, *see, e.g.*, *Jones v. Bd. of Ed. of City of Chi.*, No. 20 C 4884, 2020 WL 5422857, at *2 n.4 (N.D. Ill. Sept. 10, 2020); and the Illinois Appellate Court has said the same with regard to the right to privacy established in section 20. *AIDA v. Time Warner Entm't Co., L.P.*, 332 Ill. App. 3d 154, 162, 772 N.E.2d 953, 961 (2002) ("the language of article I, section 20, is hortatory and does not create a cause of action"). The defendants are entitled to dismissal of this claim.

### 5. Indemnification claims

Logan and Johnson each assert an indemnification claim under 745 Ill. Comp. Stat. 10/9-102 (Logan Am. Compl., count 12; Johnson Compl., count 5). Cook argues that the Court should dismiss these claims because the City is not required to indemnify employees absent misconduct, which he has not yet been found to have committed. It is a bit odd for a defendant to seek dismissal of a claim that asserts that someone else must indemnify that defendant, but that aside, Cook's argument lacks merit.

"Although a city is not required to pay indemnity while its employee's liability is disputed, it does not follow that a plaintiff must wait to file an indemnification claim under the Act until final judgment against a city employee." *Perkins v. O'Shaughnessy*, No. 10

24

C 5574, 2011 WL 579333, at *3 (N.D. Ill. Feb. 9, 2011); *see Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) (allowing a plaintiff to bring an indemnification claim before any judgment against the defendant officer). Furthermore, the City does not contend that Cook acted outside the scope of his employment. Def. City's Mem. of Law in Supp. of Mot. to Dismiss (dkt. no. 23) at 14 n.5. Thus the City is not entitled to dismissal of the plaintiffs' indemnification claims.

### Conclusion

For the foregoing reasons, the Court dismisses Johnson's claims for violation of due process, willful and wanton conduct, and intentional infliction of emotional distress (Johnson Compl., counts 1, 4, and 5) but declines to dismiss his claims for violation of equal protection against Cook and the City and his indemnification claim (counts 2, 3, and 6). The Court dismisses Logan's claims for defamation against the City, as well as his claims of negligent infliction of emotional distress, intentional infliction of emotional distress, violation of his Illinois constitutional rights, negligence, gross negligence, and willful and wanton conduct (Logan Am. Compl., counts 3 and 4 as to the City; counts 5, 6, 7, 8 (both counts numbered 8), and 11) but declines to dismiss his claims against both the City and Cook for violation of his Fourth Amendment, due process, and equal protection rights, his defamation claims against Cook, and his indemnification claim (counts 1, 2, 9, 10, and 12, and counts 3 and 4 as to Cook).

The defendants are directed to answer the remaining claims in both complaints by no later than November 3, 2020.

_____

MATTHEW F. KENNELLY
United States District Judge

Date: October 12, 2020