IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN LOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-1323 |
| v. ) | Honorable Matthew F. Kennelly |
| ) | |
| CITY OF EVANSTON, a municipal corporation, ) | |
| and EVANSTON POLICE CHIEF DEMITROUS ) | |
| COOK, in his personal and official capacity ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANT DEMITROUS COOK
FOR SUMMARY JUDGMENT AS TO ALL REMAINING CLAIMS**

Defendant, DEMITROUS COOK ("Cook"), by his attorneys, submits this Memorandum of Law in support of his Motion for Summary Judgment against Plaintiff, KEVIN LOGAN ("Logan" or "Plaintiff"), as follows:

**Introduction**

Plaintiff brought this action against the City of Evanston ("Evanston") and Evanston's Chief of Police, Cook, alleging a variety of constitutional and state law claims. After this Court's ruling on the Defendants' motions to dismiss, a number of federal and state law claims remain. Plaintiff alleges that Defendants violated his Fourteenth Amendment rights to equal protection under law based on race by publicly sharing the booking photographs and personal information of minorities including Plaintiff while not doing so for white civilians. Amd. Comp., ¶¶63, 67, 69, 70. Plaintiff alleges that Defendants violated his Fourteenth Amendment rights to privacy in avoiding the disclosure of personal matters by creating, disclosing and publishing the document that contained Plaintiff's mug shot and the letters "HIV" handwritten on it. Amd. Comp., ¶¶41, 42, 43, 45, 78.

In addition, Plaintiff asserts state law claims against Cook for defamation *per se* and defamation. Amd. Comp., ¶¶100, 101, 109, 110, 115.

As explained below, Cook is entitled to judgment in his favor on all of Plaintiff's remaining claims.

## **FACTS**

Plaintiff is an African American man residing in Cook County. Facts, ¶1[1]. At the time of the incidents described in the Complaint, Cook was the Chief of Police for the City of Evanston. Facts, ¶2. Cook's duties as Chief of Police included conducting criminal investigations. Facts, ¶3. In February 2020, Cook was investigating a criminal case. Cook sought out photographs of some of the persons whose names appeared in the case in order to aid his investigation. Facts, ¶¶3, 8. Cook was told that he could obtain photographs of some of the persons from the back of the door of the NET (Neighborhood Enforcement Team) office in the Evanston Police Department. Facts, ¶3. On February 17, 2020, Cook visited the NET office to obtain pictures of some of the persons referenced in the case he was investigating. Mug shots including that of Plaintiff were posted on the back of the door in the NET office. Facts, ¶5.

Using his personal iPhone and the Snapchat photography application, Cook took pictures of the mug shots that were on the back of the door in the NET office. Facts, ¶¶8, 9. Beside Plaintiff's mug shot were written the words, "Pending HIV." Facts ¶12. Plaintiff has never tested positive for HIV. Facts ¶13. Prior to February 2020, Plaintiff had only received an HIV test in Stateville Prison in 2017. The Evanston police department did not have any records showing that Plaintiff had HIV,

---

[1] References to "Facts, ¶__" are to paragraphs of Cook's Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue.

and Plaintiff did not have an HIV test pending. Facts ¶¶14, 16. No mug shots of white persons were posted on the back of the NET office door. Facts ¶10. No white person had been mentioned or identified in the case that Cook was investigating. Facts ¶11.

Unbeknownst to Cook, when he took pictures of the mug shots with the Snapchat app on his camera, he posted them to the Snapchat social media platform. Facts ¶¶17, 18, 20. Cook never intended to post the pictures on Snapchat. Facts ¶18. Cook only became aware that he had posted pictures of the mug shots on Snapchat when he received a telephone call from Evanston Deputy Chief Jody Wright later that same day. Facts ¶32. Upon learning of his mistake, Cook took immediate steps that evening to delete the photos from his Snapchat account. Facts ¶33. A few days thereafter, Cook also deleted the Snapchat application from his telephone altogether. Facts ¶33.

Cook did not post Plaintiff's mug shots to Snapchat out of malice toward Plaintiff. He did not post the mug shots because the mug shots were of Black men, nor because he had any issue with anyone in the photos. Facts ¶35. Plaintiff and Cook do not know each other personally. Facts ¶26. Plaintiff does not know why Cook posted Plaintiff's mug shot on Snapchat nor if Cook did so intentionally. Facts ¶26. Plaintiff has no information indicating that Cook or the Evanston Police Department has any issue with Plaintiff. Facts ¶28.

Cook used Snapchat to take photographs because of the quality of the pictures. The only training that Cook received on how to use Snapchat was from a woman who put the app on his phone and showed him how to use the camera feature. Cook never read the Snapchat manual. Facts ¶9.

After learning about the posting of the mug shot to Snapchat, Plaintiff and his girlfriend both took HIV tests. The results were negative. Plaintiff posted his negative test results on social media and shared the results with family members. Facts ¶30. This lawsuit followed.

## **SUMMARY JUDGMENT STANDARD**

In deciding a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure, the district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 595 (7th Cir. 2012). For summary judgment purposes, the court views the facts in the light most favorable to the nonmoving party and allows the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, the court must only draw reasonable inferences based on the evidence in the nonmovant's favor, and not all conceivable inferences. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)

A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in the pleadings to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). Moreover, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). A trial court is obligated to enter summary judgment against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U. S. 317, 322 (1986).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Szymanski v. Rite-way Lawn Maintenance Co.*, 231 F.3d 360, 364 (7th Cir. 2000). "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997).

## ARGUMENT

While working on an investigation of a criminal case, Cook accidentally posted pictures of Plaintiff's mug shot to the Snapchat social media platform. Plaintiff's mug shot contained the handwritten notation, "Pending HIV." Notwithstanding Plaintiff's understandable distress at this occurrence, Cook's inadvertent act does not constitute a constitutional violation. In addition, under Illinois law, Cook has absolute immunity for defamation claims growing out of his official duties. Consequently, Cook is entitled to summary judgment.

**I.  COOK IS ENTITLED TO JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAIM BASED ON HIS RACE.**

Plaintiff's Equal Protection claims are dispersed throughout the Complaint. However, the most cogent recitation of the claim is found in paragraphs 162 through 166 of Count 9 of the Amended Complaint as follows:

162.  Plaintiffs [sic] are all African American.

163.  Upon information and belief, based on the exhibits, all of the individuals who had their pictures and personal information shared by Defendant Cook were minorities.

164. Upon information and belief, based on the exhibits, even though white individuals have committed criminal acts in the City of Evanston, Defendant Cook did not publicly share booking photographs and personal information of white civilians.

165. The disparagement [sic] treatment between minorities and Caucasians in publicly sharing minority civilian's personal information had no legitimate governmental purpose.

166. By treating minority civilians and Caucasian civilians in such a different manner, Defendant Cook violated Plaintiffs' right under the Fourteenth Amendment to Equal Protection.

In short, Plaintiff claims that because Cook did not post mug shots of white persons on Snapchat and only posted mug shots of minorities, Plaintiff's equal protection rights were violated. Plaintiff's argument is without merit.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382 2394, 72 L.Ed.2d 786 (1982). A state official's violation of the Equal Protection Clause on account of race cannot be based on a mistake or even a negligent act, since violation of the Equal Protection Clause requires proof of intent. *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021). Whether the police official has violated state laws or police regulations is irrelevant to the question of whether a police official has violated the Constitution. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Thus, Plaintiff here has the burden of presenting evidence that supports an inference that Cook intended to violate Plaintiff's equal protection rights. No such evidence exists in this record.

6

The undisputed evidence in this case supports only one conclusion: Cook, unfamiliar with the use of an application that had been put on his cell phone, accidentally posted mug shots to the social media platform Snapchat. Facts, ¶¶17, 18, 20. This does not a constitutional violation make.

The Seventh Circuit has recognized two means of demonstrating intent regarding alleged Equal Protection Clause discrimination claims. One means is a demonstrated history of animus. *Swanson v. City of Chetek,* 719 F.3d 780 (7th Cir. 2013).

*Swanson* involved a class of one equal protection claim. In *Swanson,* the plaintiff and the mayor of the town were neighbors. When Swanson decided to remodel his home and put in a three-foot high fence, the mayor began a campaign of harassment of Swanson that included telling the building inspector that he should not issue the remodeling permit; repeatedly entering the Swanson home without permission; using his influence to block the issuance of a fence permit; and telling the fence building team that Swanson was a drug dealer and would not pay for the work. *Swanson,* 719 F.3d at 782. The mayor's obvious animus against Swanson was sufficient for the Seventh Circuit to reverse the grant of summary judgment in favor of the municipality. *Id.* at 785. No such evidence exists in this case.

Here, Plaintiff admitted that he does not know Cook personally, and he does not know why Cook posted his mug shot. Plaintiff admitted that he does not know if Cook posted the mug shots intentionally. Facts ¶26. Nor does Plaintiff know if Cook posted the mug shots because the mug shots were of Black men. Facts, ¶27. There is no evidence in the record that Cook or anyone in the Evanston Police Department had any issue with Plaintiff. Facts ¶28. In the absence of any evidence of animus between Cook and Plaintiff, Plaintiff must present evidence that Cook treated similarly situated persons not of the same race differently.

The Seventh Circuit has explained the similarly situated analysis as follows:

> To achieve clarity, courts look to the treatment of similarly situated individuals: if all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment.

*Geinosky v. City of Chicago,* 675 F.3d 743, 748 (7th Cir. 2012). The Complaint presents the simplistic formulation that since all the mug shots were of Black Evanston citizens accused of crime and no white Evanston citizens, ergo, there is discrimination. Complaint, ¶¶163-167. But this formulation does not address the question of whether "all principal characteristics of the two individuals are the same." *Geinosky*, *Id.*

Cook did not randomly choose mug shots to photograph. He was pursuing a criminal investigation. Facts, ¶3. The mug shots that Cook photographed and inadvertently posted to Snapchat were of persons who were mentioned in the case. Facts, ¶8. If white persons had been mentioned in the case and Cook posted the mug shots of only Black persons, Plaintiff could legitimately argue that Cook had not treated similarly situated persons the same. But the undisputed evidence in this case is that no white persons were mentioned in the case that Cook was investigating. Facts, ¶11. Similarly, if Cook had photographed mug shots of white persons and minorities on the back of the NET office door and posted only the mug shots of Black persons, there would arise an inference that similarly situated persons were not being treated similarly. But again, none of the pictures on the back of the NET office door were of white persons. Facts, ¶10.

Plaintiff cannot show preexisting animus between Cook and himself, nor can Plaintiff show that Cook treated similarly situated persons of a different race differently than he treated Plaintiff. Therefore, Cook is entitled to summary judgment on Plaintiff's Equal Protection Cause claims.

**II. THE DOCTRINE OF QUALIFIED IMMUNITY DEFEATS PLAINTIFF'S CLAIM THAT COOK VIOLATED PLAINTIFF'S RIGHT TO PRIVACY UNDER THE FOURTEENTH AMENDMENT BY DISCLOSING PLAINTIFF'S HIV STATUS.**

The mug shot of Plaintiff that Cook inadvertently posted to Snapchat contained the handwritten notation "Pending HIV." Facts, ¶12. Relying on the line of Seventh Circuit cases that recognize a constitutional right to protection of one's medical records, Plaintiff asserts that Cook violated Plaintiff's Fourteenth Amendment rights by posting the mug shot[2]. Amd. Comp., ¶¶82, 83. Plaintiff's claim of violation of his privacy rights by Cook fails because of the doctrine of qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine the existence of qualified immunity, the court must engage in a two step process. First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right; second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Plaintiff's claims fail both steps of the analysis.

As noted above, the constitutional right that Plaintiff alleges Cook violated is the right of privacy regarding his personal matters. The United States Supreme Court has pointedly declined to answer the question of whether the Constitution protects an individual's right to privacy as Plaintiff

---

[2]Plaintiff has never asserted that Cook did not have the right to publish his mug shot, but only the mug shot with the reference to HIV.

alleges here. *National Aeronautics and Space Administration v. Nelson,* 562 U.S. 134, 138, 131 S. Ct. 746, 751 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in *Whalen* and *Nixon*."). However, in this Circuit, the right to protection of one's medical records and other similarly intimate personal details has been recognized. *See e.g., Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir.1995); *Denius v. Dunlap*, 209 F.3d 944, 955 (7th Cir.2000). The fatal flaw in Plaintiff's argument is that no information concerning his private matters was published.

In the *Anderson* case, the issue the Court addressed concerned an inmate who was infected with the HIV virus. The plaintiff in that case alleged that prison guards divulged his HIV status to other inmates subjecting the plaintiff to ridicule and humiliation among other things. *Anderson,* 72 F.3d at 520. In *Denius*, the issue was a school board's requiring a teacher to authorize disclosure of his medical records as a condition of employment. *Denius*, 209 F.3d at 949. These cases do not provide support for Plaintiff's claims.

In *Anderson*, *Denius* and similar cases, the issue concerns the release or publication of factually accurate, personal information of the plaintiff. That is not Plaintiff's allegation here. The gravamen of Plaintiff's complaint here is that Cook published on Snapchat a mug shot indicating that Plaintiff is infected with HIV. See *e.g.,* Joint Status Report file on September 21, 2021 ("Constitutional right to privacy can be characterized as right to confidentiality, which includes right to protection regarding information about state of one's health."). However, the facts belie Plaintiff's claim that any information concerning the state of his health was divulged.

Plaintiff has loudly and repeatedly proclaimed that he is not HIV positive. Facts, ¶13. Nor did he have an HIV test pending in February 2020. Facts, ¶16. Moreover, the Evanston Police

Department did not have any records indicating that Plaintiff was HIV positive. Facts, ¶15. Thus, the Snapchat posting did not divulge Plaintiff's personal, confidential information. Assuming Plaintiff's interpretation of the mug shot, the Snapchat posting published false information about Plaintiff. Plaintiff himself recognizes that the Snapchat posting was not factual information about him, but rather false information concerning his HIV status, which is why Plaintiff has filed two Counts against Cook alleging defamation. See Counts III and IV of the Complaint.

Thus, in applying qualified immunity analysis to the facts of this case, the question is did Cook's publication of a false statement about Plaintiff's HIV status violate Plaintiff's constitutional rights. That question was answered in the negative by the Supreme Court in *Paul v. Davis,* 424 U.S. 693 (1976). In *Davis*, the Louisville Chief of Police had distributed flyers to businesses in the Louisville, area. The flyers consisted of five pages of mug shots of persons who were allegedly shoplifters including the plaintiff, Paul. Paul sued Davis and the City of Louisville alleging defamation because his mug shot was included on the fliers, although he had never been convicted of shoplifting. 424 U.S. at 695-696. In that context, the Supreme Court held that defamation by a municipal employee did not violate the Fourteenth Amendment. 424 U.S. at 712. Therefore, since Cook's publication of Plaintiff's mug shot with the words "Pending HIV" did not constitute disclosing of Plaintiff's personal medical information, but at best, disclosing of false information about Plaintiff, Plaintiff's claim fails at the first step of the qualified immunity test. Under *Davis* and its progeny, a governmental official's publishing of false information about a person does not constitute a violation of the Constitution. *Id.*

Plaintiff's claim necessarily fails the second step of the qualified immunity test as well. In February 2020, Cook did not and could not have known that publishing inaccurate information

concerning Plaintiff's HIV status violated a "clearly established" right, because under *Davis*, no such constitutional right was violated. Accordingly, Cook is entitled to judgment on Plaintiff's Equal Protection Clause claim concerning the publishing of his mug shot with the handwritten words "Pending HIV."

### III. COOK IS ENTITLED TO ABSOLUTE IMMUNITY FROM PLAINTIFF'S TWO DEFAMATION CLAIMS.

In Counts III and IV of the Complaint, Plaintiff alleges that Cook committed defamation *per se* and simple defamation by publishing the mug shot that imputed to Plaintiff a loathsome communicable disease, HIV. Complaint, ¶¶99, 100, 101, 109, 110. Cook is entitled to summary judgment on these claims because as a governmental official acting within the scope of his authority, he has absolute immunity.

As the Seventh Circuit explained in *Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016), in Illinois governmental employees in the executive branch are entitled to absolute privilege concerning statements they make in the course of their duties. The *Novoselsky* court stated the following:

> Illinois courts have long held that executive branch officials of state and local governments cannot be civilly liable for statements within the scope of their official duties. This immunity covers even defamatory statements. The protection cannot be overcome by demonstrating "improper motivation or knowledge of the statement's falsity, including malice.". This absolute immunity for such statements "represents a severe restriction" for individuals seeking redress against defamation. The Supreme Court of Illinois has explained that this immunity is "justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability." *Id.* The privilege "provides a complete immunity from civil action."

*Novoselsky*, 822 F.3d at 349 (internal citations omitted).

As the Chief of Police for the City of Evanston, Cook qualifies as a local governmental official. The only question remaining is did Cook make the statement – in this case the allegedly defamatory posting – in the scope of his official duties. The answer is obviously yes.

First, Plaintiff acknowledges that Cook was acting in the scope of his official duties by suing him in his personal and official capacity for making the Snapchat posting. Plaintiff also alleges in the Complaint that, "The Defendants acted under color of law." Amd. Comp., ¶55. But even without consideration of Plaintiff's admissions, there is no question that Cook's actions were taken within the scope of his official duties. Cook was conducting an official criminal investigation in his role as Chief of the Evanston Police Department. Facts, ¶3. Plaintiff's mug shot was located within an office in the Evanston Police Department. Facts, ¶5. Cook took pictures of Plaintiff's mug shot while on duty at the Evanston Police Department. Facts, ¶¶3, 8. Thus, clearly Cook was acting in his official capacity as Chief of the Evanston Police Department when he accidentally published Plaintiff's mug shot to Snapchat. Under well-established Illinois law, Cook is entitled to absolute immunity against Plaintiff's defamation claims. *Blair v. Walker,* 64 Ill.2d 1, 349 N.E.2d 385, 387 (1976).

## Conclusion

Plaintiff's equal protection claim based on race fails because there is no evidence of animus between Plaintiff and Cook, and Plaintiff cannot show that Cook treated similarly situated persons of a different race more favorably. Plaintiff's claim that Cook violated Plaintiff's Fourteenth Amendment rights by publishing personal, intimate information about Plaintiff fails because none of Plaintiff's personal information was actually divulged. Finally, Plaintiff's defamation claims fail

because in Illinois, local governmental officials have absolute immunity from all claims of defamation while acting within the scope of their duties as Cook was.

For the foregoing reasons, Defendant Demitrous Cook prays for a judgment in his favor and against Plaintiff on all remaining claims.

                                    Respectfully submitted,

                                    **DEMITROUS COOK**

                                    BY:    s/ Hubert O. Thompson
                                                        One of His Attorneys

| Charles E. Pinkston | Hubert O. Thompson |
|---|---|
| **CHARLES E. PINKSTON** | **BROTHERS & THOMPSON, P.C.** |
| 20 N. Clark Street, Suite 3300 | 155 North Michigan Avenue Suite 200 |
| Chicago, IL 60602 | Chicago, Illinois 60601 |
| (312) 578-1957 | (312) 372-2909 |
| legalatrics@gmail.com | hthompson@brothersthompson.com |