**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN LOGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 1323** |
| | ) | |
| **CITY OF EVANSTON and EVANSTON POLICE CHIEF DEMITROUS COOK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Kevin Logan sued the City of Evanston and Evanston Police Chief Demitrous Cook after Cook posted Logan's photo on the social media app, Snapchat. Handwritten next to Logan's picture were the words "pending" and "HIV." Both defendants have moved for summary judgment on all of Logan's remaining claims. For the reasons below, the Court grants summary judgment in favor of both defendants on Logan's Fourth Amendment and equal protection claims under 42 U.S.C. § 1983 and in favor of Cook on Logan's state-law defamation claim. The Court overrules the defendants' summary judgment motions with respect to Logan's due process claim under section 1983.

## Background

Snapchat is a mobile social media application that allows users to upload and share photos and videos. The platform allows users to share content both privately via

direct messages and publicly via a Snapchat "story," which is essentially a personal public profile. To publicly share a picture on Snapchat, the user must first click the "Story" option and then click a confirmation button to share the photo.

On February 17, 2020, Cook published onto his personal Snapchat story several photos of individuals who were of interest in Evanston police investigations. Cook also published these individuals' dates of birth and last known addresses. Some of the individual photos had comments like "in custody" or "DOA" (dead on arrival) handwritten next to the image. The word "pending" appeared next to Logan's identifying information, and "HIV" was handwritten next to his image. The photo and wording appeared in Cook's story as follows, with Logan's image and his personally identifying information redacted for privacy reasons:


Demitrous Cook
Kevin Logan (Haircut)
DOB
LKA:
IR #
PENDING
H
I
V
Send a chat

Social media users who saw Cook's story subsequently shared the photos and personal information on Facebook and through text messages. Days later on February 22, Logan took an HIV test, which was negative, to rebut the perceived public belief that he might have HIV.

On February 21, 2020, after Cook was informed that the pictures had been shared by members of the public, he removed them from his Snapchat story and issued a public statement regarding the incident. He stated that the individuals whose information he shared were subjects previously identified in Evanston Police Department investigations and that the photos were taken to assist him with an investigation. He further stated that he did not realize that photos taken with the Snapchat app could be made public with a single click. The Evanston city manager suspended Cook for three days because of the incident.

The Evanston Police Department has multiple policies in place regarding actions like Cook's. For example, the department's social media policy "prohibits speech that tends to compromise the Department's professionalism." Pl.'s Resp. to Def. City of Evanston's Rule 56 Stat. ¶ 24 (dkt. no. 89). The department also has a policy governing the use of cell phones, which "prohibits the use of such devices to take pictures, make audio or video recordings or make copies of pictures or recordings unless it is directly related to Department business." *Id.* ¶ 25. Both policies, however, allow for exceptions if authorized by the chief of police—namely, Cook.

Logan first filed suit in this Court on February 23, 2020, and later filed an amended complaint on June 15. On October 12, 2020, the Court dismissed some of Logan's claims but declined to dismiss others. *See Logan v. City of Evanston*, No. 20 C

1323, 2020 WL 6020487 (N.D. Ill. Oct. 12, 2020). The defendants have now moved for summary judgment on all of Logan's remaining claims.

**Discussion**

To obtain summary judgment, a party must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-moving party must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

**A. Cook's motion**

Cook has moved for summary judgment on all three of Logan's claims against him: claims under 42 U.S.C. § 1983 for violation of his equal protection and substantive due process rights and under state law for defamation.

**1. Equal protection claim**

Cook argues that he is entitled to summary judgment on Logan's claim that Cook violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against him based on race. For an equal protection claim to survive summary judgment, the plaintiff must offer evidence of the following elements: 1) he is a member

of a protected class; 2) he was similarly situated to individuals who are not in the protected class; 3) he was treated differently from those persons; and 4) the defendant acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Logan, who is Black, has not provided evidence of Cook's intent to discriminate based on race. Logan contends that it is sufficient to prove a defendant acted recklessly, but that is not the law in this circuit. The Seventh Circuit has emphasized that a plaintiff must prove the defendant acted *intentionally* to establish a viable equal protection claim. *See Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (explaining that an equal protection violation "on account of race cannot be based on a mistake or even a negligent act"). Although Cook only published photos of Black men, the undisputed facts show that this was because all of the men under investigation in the particular case were Black. *See* Pl.'s Resp. to Def. Cook's Rule 56 Stat. ¶ 11 (dkt. no. 85). Logan's assertion that Cook also had mugshots of white individuals but chose not to publish them is not supported with a citation to any evidence, nor has the Court found any support for the assertion in the record.

The Court concludes that Cook is entitled to summary judgment on Logan's equal protection claim against him.

**2. Due process claim**

Logan has asserted a claim under the Fourteenth Amendment by alleging that Cook violated his right to privacy under the Due Process Clause. The Seventh Circuit has "recognize[d] a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information" under the Fourteenth Amendment. *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). This protection

extends to medical "information that most people are reluctant to disclose to strangers." *Id.* Accordingly, Logan's claim is based on Cook's public disclosure of his supposed HIV status on Snapchat without his permission.

Cook seeks summary judgment based on qualified immunity. *See Logan v. City of Evanston*, No. 20 C 1323, 2020 WL 6020487, at *7–8 (N.D. Ill. Oct. 12, 2020) (rejecting Cook's qualified immunity defense because of forfeiture). This defense "protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). A court engages in a two-step analysis to assess such a defense: determining 1) whether the officer violated a constitutional right; and 2) whether the right at issue was clearly established at the time of the violation. *Mason-Funk v. City of Neenah*, 895 F.3d 504, 507 (7th Cir. 2018).

Cook's argument under the first step focuses on Logan's HIV status at the time of publication. Cook contends that because Logan was not actually HIV positive and did not have a pending HIV test, the "pending" and "HIV" text above and next to his photo did not actually contain confidential information subject to constitutional protection. In other words, Cook says that he is claimed to have published *false* medical information about Logan and that this does not amount to actionable publication of private medical information under the Fourteenth Amendment according to Supreme Court precedent. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (concluding that defamation by a municipal employee was not actionable under Fourteenth Amendment).

Cook's argument amounts to the proposition that if a public official discloses

personal medical information about an individual that is accurate, the official violates the Constitution, but if he discloses false medical information about an individual, he does not. This is a Catch-22 argument that does not carry the day. First of all, Cook's reliance on *Paul v. Davis* is misplaced. In that case, the Supreme Court emphasized that the plaintiff's claim did not touch upon "a sphere contended to be 'private'"; rather, the plaintiff's claim was premised on the state publicizing an official arrest record. *Id.* at 713. Here, in contrast, Logan's claim involves information falling squarely within a private sphere. *See Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000) (recognizing that the Due Process Clause protects "the confidentiality of medical information"); *Schaill v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1322 n.19 (7th Cir.1989) (similar). Also of note, Logan received an HIV test in 2017. *See* Pl.'s Resp. to Def. Cook's Rule 56 Stat. ¶ 14 (dkt. no. 85). The fact that he received a test in the recent past, regardless of whether the result was positive or negative, suffices as medical information that he might not want the state to publicize.

At bottom, a government official can infringe a person's right to keep his medical information private even if the medical information the official discloses about him is false. The Court concludes that a reasonable jury could find that Cook violated Logan's due process rights in publishing the photo and the text next to it.

Cook's argument for qualified immunity also falters on the clearly established prong. To demonstrate that a right was clearly established at the time of the alleged violation, either Supreme Court or Seventh Circuit precedent must exist that would have put the official on notice. *See Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017)."A right is clearly established when it is 'sufficiently clear that every reasonable

official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017). The law was clearly established by February 2020 that there is a substantive due process right to medical privacy. The Seventh Circuit "has outlined a clearly established 'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest." *Denius*, 209 F.3d at 956; *see also Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995); *Schaill*, 864 F.2d at 1322 n.19 (7th Cir. 1989). Though not controlling for the purpose of notice or precedent, this case is similar to *Grimes v. County of Cook*, 455 F. Supp. 3d 630 (N.D. Ill. 2020), in which this Court's colleague, Judge Gary Feinerman, overruled on a motion to dismiss a defense of qualified immunity asserted in response to a claim based on a government official's public disclosure of the plaintiff's private transgender status. *Id.* at 639–40. Logan's HIV status is confidential medical information just as Grimes's transgender status was, and governing precedent put Cook on notice that publicly sharing such information could violate the Fourteenth Amendment. Because Cook has not offered a countervailing state interest that would otherwise justify disclosure, he is not entitled to summary judgment based on qualified immunity.

**3. Defamation claims**

Cook argues that he is entitled to absolute immunity on Logan's defamation claims under Illinois law, regardless of whether the statement was defamatory. "Illinois

courts have long held that executive branch officials of state and local governments cannot be civilly liable for statements within the scope of their official duties." *Novoselsky v. Brown*, 822 F.3d 342, 349 (7th Cir. 2016). The sole consideration regarding the immunity's scope is "'whether the statements made were reasonably related' to the official's duties," meaning the immunity can cover defamatory statements. *Id.* at 350 (quoting *Geick v. Kay*, 236 Ill. App. 3d 868, 877, 603 N.E.2d 121, 128 (1992)).

Logan and Cook disagree over whether Cook was acting within the scope of his official duties. Cook points out that he was investigating a crime and taking photos of persons potentially involved in the crime and contends this falls within the authority of a police chief. Logan, in contrast, characterizes the incident more narrowly and focuses on the fact that the photos were published on Cook's personal Snapchat account.

Logan's characterization of the incident disregards the surrounding context. All that is necessary for immunity to attach is that the statements were "reasonably related" to the officer's authority. Logan does not dispute that the photos "were job related as part of the investigation that Cook was conducting." Pl.'s Resp. to Def. Cook's Rule 56 Stat. ¶ 8 (dkt. no. 85). This concession is dispositive.

The Court concludes that Cook is entitled to absolute immunity under state law on Logan's defamation claims against him.

**B. Evanston's motion**

Evanston has moved for summary judgment on the question of its liability under *Monell* and on the merits of all three remaining constitutional claims: Fourth Amendment, due process under the Fourteenth Amendment, and equal protection under the Fourteenth Amendment.

**1. *Monell* liability**

Evanston maintains that Logan cannot establish its liability under *Monell*, which is required for Logan to prevail on any of his claims against the city. Under *Monell*, a "municipality may be found liable under § 1983 when it violates constitutional rights via an official policy or custom." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Id.* "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cty.*, 183 F.3d 734, 737 (7th Cir. 1999).

Logan premises his theory of *Monell* liability on the proposition that, as chief of police, Cook had final policymaking authority that he exercised, causing Logan's constitutional injuries. In its motion for summary judgment, Evanston argues that Cook lacked policymaking authority with respect to the action at issue because the city manager oversees the police chief and the Evanston Police Department has policies regulating the use of both social media and cell phones. Evanston also contends that Cook did not intend to change police department policy when he accidentally published the photos.

The Seventh Circuit has outlined several factors to guide courts in determining whether an official is a final policymaker. This analysis primarily entails a three-part inquiry: 1) whether the official is constrained by department or legislative policies; 2)

whether the official's decision was subject to meaningful review; and 3) whether the policy decision was within the realm of the official's grant of authority. *See Vodak v. City of Chicago*, 639 F.3d 738, 748 (7th Cir. 2011). This inquiry does not simply turn on "governmental hierarchy, but rather on an examination of whether an individual municipal officer 'was at the apex of authority for the *action in question*.'" *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 774 (N.D. Ill. 2014) (quoting *Vodak*, 639 F.3d at 748) (emphasis in original).

A reasonable jury could conclude that Cook was acting at the apex of the city's authority when posting the photos, notwithstanding the Evanston city manager's official oversight of the police chief position. Critically, Cook posted the photos to assist himself in conducting a criminal investigation, and the record suggests that Cook had complete authority over how the Evanston Police Department conducts its criminal investigations. During his deposition, Cook testified that he was in charge of day-to-day operations of the police department, which includes controlling how criminal investigations are conducted. This means that Cook could be found to be, in effect, the city for the purposes of *Monell* liability. *See Vodak*, 639 F.3d at 748 ("All that matters in this case is that Chicago's police superintendent has sole responsibility to make policy regarding control of demonstrations. . . . The superintendent *was* the City, so far as the demonstration and arrests were concerned." (emphasis in original)). Conversely, there is no evidence that the city manager had any authority over how criminal investigations are conducted. Although technically Cook's boss, the Evanston city manager advises the police department only on personnel decisions and media relations. This testimony tends to undercut Evanston's reliance on the city's formal hierarchy. *Cf. McMillian v.*

*Monroe County*, 520 U.S. 781, 785 (1997) (explaining that *Monell* liability instructs courts "to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue").

Additionally, many of the police department's policies—including the social media and cell phone policies—expressly permit exceptions when authorized by the police chief. *See* Pl.'s Resp. to Def. City of Evanston's LR 56 Stat. ¶ 24–25 (dkt. no. 89). This similarly tends to undercut Evanston's argument that official policy limited Cook's discretion, even though he was later subject to discipline for his actions.

Taken as a whole, the record reflects a genuine factual dispute regarding whether Cook was acting at the apex of the city's authority when he published the photos. This is further buttressed by the fact that Evanston police policy specifically allows for the use of social media to aid in criminal investigations. *Id.* ¶ 27. It is ultimately for a jury, not the Court on summary judgment, to weigh the evidence and determine whether it measures up to the requirements for *Monell* policymaker liability.

For these reasons, Evanston is not entitled to summary judgment on the question of *Monell* liability.

**2. Fourth Amendment claim**

Evanston contends that it is entitled to summary judgment on Logan's Fourth Amendment claim because that constitutional provision does not provide a general right to privacy. That is correct. *See Katz v. United States*, 389 U.S. 347, 350 (1957). Logan's citation to *Big Ridge, Inc. v. Federal Mine Safety & Health Review Commission*, 715 F.3d 631, 644 (7th Cir. 2013), does not support his position either. The relevant issue in that case was whether the plaintiffs were required to comply with administrative

subpoenas by submitting medical information; the court concluded that the subpoena requests did not violate any Fourth Amendment rights. That fact pattern has little resemblance to Logan's case.

In short, Logan has not provided evidence from which a reasonable jury could find a violation of his Fourth Amendment rights. Rather, most of his arguments about a purported Fourth Amendment violation align better with his due process claim. Evanston is entitled to summary judgment on Logan's Fourth Amendment claim.

**3. Due process claim**

Evanston argues that it is entitled to summary judgment on Logan's due process claim against the city, which is premised on Cook's actions as a final policymaker. For the reasons previously discussed, a reasonable jury could conclude that Cook violated Logan's due process rights and that Evanston is liable for the constitutional violation under *Monell* based on Cook acting as a final policymaker. The fact that the handwritten information written next to Logan's photo does not amount to an official medical *record* does not bar recovery, as the Due Process Clause protects an individual's private medical *information* from government disclosure. *See Wolfe*, 619 F.3d at 785; *Denius*, 209 F.3d at 956 ("In this Circuit, the right clearly covers medical records and communications."). Evanston is not entitled to summary judgment on Logan's due process claim.

**4. Equal protection claim**

Evanston argues that it is entitled to summary judgment on Logan's equal protection claim, which like his due process claim, is premised on Cook acting as a final policymaker. As discussed earlier, no reasonable jury could conclude that Cook

violated Logan's equal protection rights. Accordingly, Evanston is entitled to summary judgment on Logan's equal protection claim.

## Conclusion

For the reasons stated above, the Court grants Cook's motion for summary judgment in part [dkt. no. 74]; Cook is entitled to summary judgment on Logan's section 1983 claim under the Equal Protection Clause and his defamation claims, but not on his section 1983 claim under the Due Process Clause. The Court grants Evanston's motion for summary judgment in part [dkt. no. 78]; Evanston is entitled to summary judgment on Logan's claims under the Equal Protection Clause and under the Fourth Amendment, but not on his claim under the Due Process Clause. The Court sets the case for a telephonic status hearing on July 5, 2022 at 9:05 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. The following call-in number will be used: 888-684-8852, access code 746-1053.

MATTHEW F. KENNELLY
United States District Judge

Date: June 28, 2022